# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CONNOR CROWELL, on behalf of himself and all similarly situated employees, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:21-cv-00517 |
| M STREET ENTERTAINMENT, LLC; KAYNE PRIME, LLC; MOTO, LLC; 1120, LLC d/b/a SAINT AÑEJO; LIME, LLC d/b/a TAVERN MIDTOWN; VIRAGO, LLC; and WK, LLC d/b/a WHISKEY KITCHEN, | ) ) ) ) ) ) ) | Judge Aleta A. Trauger |
| Defendants. | ) | |

## MEMORANDUM

Before the court is plaintiff Connor Crowell's Motion for Conditional Certification and Court-Authorized Notice ("Motion for Notice") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (Doc. No. 22.) As set forth herein, the motion will be granted, but the court will require several minor revisions to the proposed Notice.

## I.    FACTS AND PROCEDURAL BACKGROUND

On July 7, 2021, Crowell filed a Collective Action Complaint (Doc. No. 1) on behalf of himself and other similarly situated current and former hourly employees who worked for defendants M Street Entertainment, LLC ("M Street Entertainment"), Kayne Prime, LLC ("Kayne Prime"), Moto, LLC ("Moto"), 1120, LLC d/b/a Saint Añejo ("Saint Añejo"), Lime, LLC d/b/a Tavern Midtown ("Tavern"), Virago, LLC ("Virago"), or WK, LLC d/b/a Whiskey Kitchen ("Whiskey Kitchen") (referred to herein collectively, in the singular, as "M Street Group," unless

necessary to distinguish among them), at any time within the three years prior to the filing of the Complaint (i.e., between July 7, 2018 and July 7, 2021). The Complaint sets forth claims for (1) violation of the FLSA's minimum wage provision, 29 U.S.C. § 206 and (2) violation of the FLSA's overtime wage provision, 29 U.S.C. § 207. (Doc. No. 1, Counts I and II.)

The plaintiff alleges that M Street Group owns and operates six restaurants in Nashville, Tennessee: Kayne Prime, Moto, Saint Añejo, Tavern, Virago, and Whiskey Kitchen (collectively, the "Restaurants"). (Doc. No. 1 ¶ 17.) The plaintiff asserts that M Street Group constitutes a single employer for purposes of liability under the FLSA. (*Id.* ¶ 38.) He also alleges that the gross annual earnings of M Street Group and each of the Restaurants operated by M Street Group individually exceeds $500,000. (*Id.* ¶¶ 52–58.)

The plaintiff alleges generally that M Street Group paid him and other similarly situated individuals a cash hourly wage lower than $7.25 per hour under the tip-credit provisions of the FLSA and failed to satisfy the requirements for utilizing the tip credit to meet its minimum-wage and overtime obligations to tipped employees, as a result of which it owes the plaintiff and those similarly situated at least the minimum wage for all hours worked. (*Id.* ¶¶ 3–4.) He also claims that M Street Group failed to pay its employees overtime wages of 1.5 times their regular rates of pay for all hours worked over 40 in any workweek. (*Id.* ¶ 5.)

The Complaint asserts that Crowell worked as a server at Virago from February 2020 through February 2021 and was paid a direct, cash wage of less than $7.25 per hour for all hours worked as a server at Virago prior to the Covid-19 pandemic; during the pandemic, he was sometimes paid a "sub-minimum wage" and sometimes paid more than the minimum wage. (*Id.* ¶¶ 70–72.) More generally, the Complaint alleges that M Street Group employs several types of hourly employees, including bartenders, servers, server assistants, and bar backs. (*Id.* ¶¶ 75–76,

94.) Because many of these employees receive tips, the tip-credit and minimum-wage provisions of the FLSA apply to M Street Group. 29 U.S.C. §§ 203(m), 206. Crowell alleges that M Street Group applies the same employment policies to all its hourly employees, including policies and practices regarding tipping, minimum wages, and overtime wages. (Doc. No. 1 ¶ 80.) According to the Complaint, M Street Group has a policy of "generally paying all [of its] tipped employees . . . a direct, cash wage of less than the federal minimum wage of $7.25 per hour" and a policy of "generally taking a tip credit to satisfy [its] minimum wage and overtime obligations." (*Id.* ¶¶ 81–82.)

Crowell further alleges that M Street Group Defendants violated the FLSA's minimum-wage and tip-credit provisions, 29 U.S.C. §§203(m), 206, by, among other things, (1) retaining a portion of tips earned by their tipped employees each shift; (2) shifting business expenses to tipped employees by requiring them to purchase uniforms and equipment; (3) requiring tipped employees to share tips with non-tipped employees who have no customer interaction; (4) requiring tipped employees to perform compensable work without compensation; and (5) requiring tipped employees to spend more than 20% of their shifts performing non-tip-producing work while paid at the lower, tipped hourly rate. He claims that, as a result, he and other similarly situated employees are entitled to recover back wages in the amount of the difference between the $7.25 per hour minimum wage and the wage actually paid to them for all hours worked during the statutory period, any expenses M Street Group shifted to them, and any tips it retained. Crowell also alleges that M Street Group failed to pay him and all similarly situated hourly employees overtime compensation for all hours worked in excess of 40 in any workweek at 1.5 times the employees' regular rates of pay, in violation of 29 U.S.C. § 207. The plaintiff claims that he and any opt-in plaintiffs will be entitled to liquidated damages in an amount equal to their back wages,

plus attorney's fees and costs, to compensate them for these FLSA violations.

M Street Group filed an Answer admitting the court's subject-matter and personal jurisdiction, admitting that the tip-credit and minimum-wage provisions of the FLSA apply to it, and denying liability. (Doc. No. 31.) M Street Group also asserts, among other affirmative defenses, that the claims of some of the individuals the plaintiff purports to represent are barred insofar as such individuals previously opted into a lawsuit before another judge of this court, styled *Fenwick v. M Street et al.*, No. 3:20-cv-00403 (M.D. Tenn.), and settled those claims by entering into a Settlement Agreement with the same defendants on March 4, 2021. *Fenwick* was dismissed with prejudice on March 9, 2021. (Doc. No. 31, at 13.)[1] The defendants deny that they form a single employer for the purposes of liability under the FLSA and further deny that all tipped and hourly employees employed or formerly employed at the Restaurants are similarly situated.

At the time he filed the Complaint, the plaintiff filed his own Consent to Sue form. (Doc. No. 1-1.) Since the filing of the Complaint through June 21, 2022, the plaintiff has filed Consent to Sue forms for at least sixty-nine other opt-in plaintiffs.

The plaintiff filed his Motion for Notice along with a supporting Memorandum of Law and, among other exhibits, the Declarations of ten current or former employees of M Street Group. (Doc. No. 66 and attachments.) The plaintiff requests that the court conditionally certify a collective consisting of all current and former non-managerial "front-of-house" ("FOH") restaurant employees who worked for any of the defendants at any time during the three years

---

[1] The plaintiff expressly concedes that individuals who joined *Fenwick* and who did not work for the defendants after the effective date of the Settlement in that case are not eligible to join this lawsuit. (*See* Doc. No. 66, at 2 n.1.) He proposes that, to "avoid confusing other eligible employees, rather than including cumbersome language in the notice itself, Plaintiffs' counsel will work with Defendants' counsel to ensure that ineligible individuals will neither receive notice nor join this case." (*Id.*)

preceding the filing of the Complaint and that the court authorize the notice to be sent to putative members of the collective. (Doc. No. 66, at 2–3.)

The plaintiff submitted his own Declaration, in which he attests under oath facts consistent with the allegations in the Complaint, but with greater detail. He asserts that, while he was employed as a server at Virago from September 2020 through February 2021, he was paid minimum wage during training and $18 per hour after training; he was required to purchase uniforms and tools of the trade during the time when he was paid minimum wage; he was required to study for menu and beverage tests off the clock and without pay and spent approximately fifteen hours outside of work doing this; he was required to complete additional training and to take a test on the Virago drink menu off the clock and without pay; as a result of the employer's "rounding up" policy, he sometimes had to pay some of his own money to the restaurant as part of the "check-out" process at the end of each shift;[2] and he regularly used his cell phone to communicate with co-workers and supervisors via text about work-related issues. (Doc. No. 66-7.)

In addition, Declarations were submitted by nine opt-in plaintiffs, collectively representing at least one FOH position at each of the Restaurants. These Declarations contain similar allegations, though they all vary slightly in terms of the restaurant at which the individual worked,

---

[2] The plaintiff describes the "rounding up" policy as follows:

Defendants would not allow me to give coins to customers as change. Instead, I had to round customer change to the nearest dollar. This policy required me to use my tip money to provide change to customers who paid in cash and whose bills had to be rounded up. As part of this policy, I had to turn in all my cash at the end of every shift. My first full week working as a server, a manager named Jacob required me to pay something like $154.00 to the restaurant as part of the check-out process. But I had only received around $153 and some change from customers that night. I did not have any personal cash on me and did not have any additional tip money, so I had to borrow $1 from a bartender named Josh to pay to Defendants before I could leave the restaurant at the end of my shift.

(Doc. No. 66-7 ¶ 7.)

the dates of employment, the precise position held, and the policies that affected each individual. Joshua Angeles attests in his Declaration that he worked as a bartender and server at Virago from June 2020 until April 2021 (Doc. No. 66-4); Steven Aulicino was a server at Kayne Prime from June 2013 until August 2018 and from May 2019 until January 2021 (Doc. No. 66-5); Ladarius Coney has worked as a server and server assistant at Tavern since December 2018 (Doc. No. 66-6); Victoria Dunn worked as a bar tender, hostess, and server at Saint Añejo and Whiskey Kitchen from December 2019 through June 2021 (Doc. No. 66-8); Amanda Durey was a server at Saint Añejo from May 2021 until October 2021 (Doc. No. 66-9); John Hicks III worked as a bartender and server at Virago from September 2020 through March 2021 (Doc. No. 66-10); Varit Krongyut worked as a host, server, and server captain at Virago from October 2019 until April 2021 (Doc. No. 66-11); JulianDre Smith worked at Saint Añejo and Moto as a server and bartender from September 2017 until September 2019 (Doc. No. 66-12).

All of these individuals attest that they were sometimes paid a tip-credit wage of less than $7.25 and sometimes paid more than the minimum wage per hour; that they were required to purchase uniforms and tools of the trade when they were being paid a tip-credit wage or minimum wage; that they were required to work off the clock to study the menu and to take tests on the contents of the menu; that they were required to work "off the clock" at the beginning and end of their shifts; that they were required to use their own tip money to provide change to customers in compliance with Virago's "rounding-up" policy; and that they regularly used their cell phones to communicate with coworkers and supervisors about work-related issues. Some of them also allege that they performed a substantial amount of work that did not produce tips, both while customers were present and when they were not. Steven Aulicino, for instance, estimates that he spent "20–30% of [his] time on running side work rather than serving customers" when customers were in

the restaurant. (Doc. No. 66-5 ¶ 10; *see also* Doc. No. 66-8 ¶ 8; Doc. No. 66-11 ¶ 8.) Many also allege that they were required to pool tips, including with bar backs who did not have any customer interaction. (*See, e.g.*, Doc. No. 66-6 ¶ 6; Doc. No. 66-8 ¶ 7; Doc. No. 66-11 ¶ 7; Doc. No. 66-12 ¶ 6.)

The plaintiff also filed, under seal, the employee handbooks for each of the Restaurants, the purpose of which was apparently to show that the same employee handbook ("M Street Team Member Handbook") is used at each of the individual M Street Group Restaurants. (Compare Doc. Nos. 68-1, 68-2, 68-3, 68-4, 68-5, 68-6.)

The defendants have filed a Memorandum in opposition to the Motion for Notice (Doc. No. 82), along with their own exhibits, including the Declaration of Debra Johnson, the Chief Operating Officer of M Street Entertainment. In her Declaration, Johnson declares that all of the Restaurants were closed between March 2020 and May 2020, because of Covid-19. After they reopened in May, the Restaurants implemented a Service Charge Program from May 2020 to April 12, 2021, "meaning that a service fee was automatically included on each customer's check." (Doc. No. 82-1 ¶ 3.) During this time frame, M Street Group employees were paid a higher hourly rate, and none of the Restaurants paid employees a tip-credit wage during that time frame. In April 2021, "the Restaurants began using a tip credit again." (*Id.* ¶ 6; *see also* Doc. No. 80-1 (April 12, 2021 "To Whom It May Concern" letter from Johnson, announcing M Street's termination of the service fee).) Johnson also attests that: (1) each individual restaurant operates as an independent restaurant, is in a separate location, and has its own separate management; (2) each restaurant updated its pay policies several times during 2021 and 2022; (3) each restaurant has its own uniform policy; (4) each restaurant has its own compensation policy for each position; (5) the employment positions and the requirements for each position vary from restaurant to restaurant;

(6) prior to March 2020, all of the Restaurants paid non-managerial employees an appropriate tip-based wage and utilized a tip credit; and (7) all employees at the Restaurants were paid minimum wage during training. (Doc. No. 82-1 ¶¶ 8–15.)

M Street Group also produced the uniform and compensation policies for each of the six Restaurants, purporting to show how they differ. (Doc. Nos. 80-2 through 80-13.) While each restaurant indeed has its own uniform policy, and the requirements vary between positions even within the same restaurant, the policies are markedly similar, even down to the date on which the policies were updated (January 20, 2020), the font and formatting of the policies, and the language used. (Compare Doc. Nos. 80-2, 80-4, 80-6, 80-8, 80-10, 80-12.) Each restaurant also has its own "FOH Hourly Team Member Compensation Structure." The policies outlined in each differ between the Restaurants depending upon the type of positions available,[3] but they are also markedly similar in formatting, style, and structure. All of the FOH Hourly Team Member Compensation Structure policies produced by the defendants show that they went into effect on April 12, 2021, and most underwent several minor revisions between that date and April 2022. (Doc. Nos. 80-3, 80-5, 80-7, 80-9, 80-11, 80-13.)

The plaintiff filed a Reply to address arguments raised in the defendants' opposition to his motion. (Doc. No. 86.)

## II.    LEGAL STANDARD

The FLSA permits employees alleging a violation of the statute to sue on their own behalf as well as on behalf of other "similarly situated" employees. The statute reads, in pertinent part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid

---

[3] For instance, all of the Restaurants employ Servers, Bartenders, and Server Assistant Food Runners ("SAFRs"); some also have Service Leads, Server Assistants, Bartender Leads, and/or Captains.

minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages. An action to recover [for such] liability . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). This provision establishes two requirements for a representative action: (1) plaintiffs must "actually be 'similarly situated'"; and (2) they must "signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

While the FLSA does not define "similarly situated," the Sixth Circuit has held that plaintiffs are similarly situated if they "suffer from a single, FLSA-violating policy" or if their "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)). The plaintiff bears the burden of establishing that the members of the putative class are similarly situated. *Comer*, 454 F.3d at 546.

Although the Sixth Circuit has never expressly mandated or approved this procedure,[4] it has recognized that the district courts "typically bifurcate certification of FLSA collective action cases," *Monroe*, 860 F.3d at 397, into a "two-phase inquiry," *Comer*, 454 F.3d at 546, as first

---

[4] *See Holder v. A&L Home Care & Training Ctr., LLC*, 552 F. Supp. 3d 731, 741 (S.D. Ohio 2021) ("Our circuit, it is true, does not appear to have expressly adopted *Lusardi*, although the circuit has acknowledged that district courts use the bifurcated certification framework.").

developed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J. 1987). The first stage, the "notice stage," "takes place at the beginning of discovery." *Comer*, 454 F.3d at 546. At this stage, the court determines whether conditional certification of a collective is appropriate and whether notice of the suit should be distributed to other employees who may be similarly situated. *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 747 (M.D. Tenn. 2018). To satisfy his burden of proof at this stage, the plaintiff must show that his "position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47 (citation omitted). The district courts applying this standard have characterized it as "fairly lenient," requiring only a "modest factual showing" that the named plaintiff and potential co-plaintiffs are similarly situated with respect to the conduct alleged in the complaint. *Crosby*, 348 F. Supp. 3d at 746. The district courts have repeatedly stated that they do "not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at this stage. *Id.* at 747 (quoting *Roberts v. Corr. Corp. of Am.*, No. 3:14-cv-2009, 2015 WL 3905088, at *10 (M.D. Tenn. Jun. 25, 2015); *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)). This lenient standard "typically results in conditional certification of a representative class" at the first stage of the class certification process. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (quoting *Comer*, 454 F.3d at 546). However, "[a]t the notice stage, the certification is conditional and by no means final." *Comer*, 454 F.3d at 546. At the second stage, after discovery, the defendant may move to decertify a conditional class. *Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-CV-00583, 2022 WL 1462965, at *5 (M.D. Tenn. May 6, 2022) (citing *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1072 (M.D. Tenn. 2015)).

Courts that have permitted the parties to conduct some discovery prior to the filing of a motion for conditional certification have sometimes applied an intermediate standard in reviewing

the motion at the first stage. *See, e.g.*, *St. Cloud v. Estes Express Lines, Inc*., No. 3:21-CV-00456, 2022 WL 2252957, at *5 (M.D. Tenn. June 22, 2022) (Trauger, J.) *(*citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011)); *see also Bowman v. Crossmark, Inc.*, No. 3:09-cv-16, 2010 WL 2835719, at *4–5 (E.D. Tenn. July 19, 2010) (holding that, where substantial discovery had been completed, the case is not in the typical "notice stage," and application of the lenient standard employed at the notice stage is not appropriate). Under this intermediate review standard, a plaintiff may be required to make a "modest 'plus'" factual showing. *St. Cloud*, 2022 WL 2252957, at *5; *Creely*, 789 F. Supp. 2d at 826.

Specifically, the court determines whether the plaintiff's factual showing would "tend to make it more likely that a class of similarly situated employees exists by comparing the plaintiff's allegations in [the] complaint with the factual record assembled." *Id.* (internal quotation marks omitted). However, as the factual record has not been fully developed, courts typically do not consider the merits of a plaintiff's claims under this standard and, instead, resolve any gaps or doubts in the evidence in favor of the plaintiff, "in light of the equitable goals and policies embodied in the FLSA." *Id.* (quoting *Creely*, 789 F. Supp. 2d at 826). In applying this standard, it is appropriate to compare the factual allegations in the Complaint with the "factual record assembled through discovery" to determine whether the plaintiff has shown that it is "more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs." *Accord Creely*, 789 F. Supp. 2d at 827.

## III.    DISCUSSION

### A.    Whether to Authorize Notice

The plaintiff seeks the court's authorization to provide notice of this lawsuit to all "current and former front-of-house employees who worked for Defendants in a non-managerial position at any time" during the three years prior to the filing of the Complaint. (Doc. No. 66, at 2.) In support

of his motion, the plaintiff argues that he has met the "relatively slight" burden of presenting some factual basis to support his claims that M Street Group violated the FLSA by forcing its employees to work off the clock, to participate in unlawful tip-sharing arrangements, and to perform excessive, non-tipped duties, and that M Street Group failed to pay overtime compensation at the proper rate. He points to caselaw supporting the legal propositions that M Street's policies were unlawful under the FLSA. The plaintiff argues that the evidence he has presented—the Declarations and handbooks—is sufficient to satisfy the requirement that they make a "modest factual showing" of the existence of similarly situated potential employees and that this is an appropriate case for court-authorized notice. (Doc. No. 66, at 21.)

M Street Group argues in its Response that the plaintiff cannot show that "*all* former and current front-of-house employees at *all* of the Defendant restaurants over the last three years are similarly situated" or satisfy the "more stringent" "modest plus standard" that applies to cases in which discovery has begun by the time the motion for notice has been filed. (Doc. No. 82, at 1–2, 9.) The defendant argues, in particular, that (1) the proposed members of the collective are not similarly situated across the relevant time period, because of significant and relevant policy changes during that time period; (2) the proposed collective are not similarly situated across the different Restaurants, because there are "key differences" among the Restaurants; and (3) the fact that the members of the proposed collective are not similarly situated even when employed by the same restaurant, "because of fundamental differences between the various employee positions." (*Id.* at 2.) Finally, M Street Group also objects to certain aspects of the proposed notice and requests that, if the court finds that notice should be issued, the parties be required to work together to submit an agreed notice. (*Id.* at 13.)

In his Reply, the plaintiff objects to M Street's suggestion that the intermediate "modest plus" standard applies and also to the suggestion that he and other members of the putative collective should be required to file, at a minimum, six separate FLSA lawsuits against each of the different Restaurants. He points out that: (1) while, indeed, Covid-related policy changes went into effect, all of the Restaurants changed their policies—to add and then to remove a service charge on customer tabs—at the same time and in the same way; (2) M Street announced its return to pre-pandemic policies in a form letter sent to all front of house employees of the M Street Restaurants; and (3) that the Restaurants had slightly different uniforms, food, and ambience "does not render [the plaintiff] and Defendants' other [front-of-house] employees dissimilar for purposes of aggregating their FLSA claims," particularly given that the defendant's own evidence shows that the front-of-house employees were all "subject to similar, but not identical, policies and practices during the recovery period." (Doc. No. 86, at 2.) He contends, that, under any standard, he has made a sufficient showing that there are other similarly situated front-of-house current and former employees from all of the Restaurants. Finally, he contends that M Street Group's objections to the form of the notice are so cursory and unsupported that they should be deemed waived.

In 1989, the Supreme Court "confirm[ed] the existence of the trial court's discretion" to facilitate notice to potential plaintiffs but did not provide "the details of its exercise." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Since then, the Court has provided "no further guidance regarding the notice-giving process." *Swales*, 985 F.3d at 436. However, as *Swales* points out, the only two mandates embraced by the FLSA and the Supreme Court are (1) that "only those 'similarly situated' may proceed as a collective" and (2) that, "while a district court may 'facilitat[e] notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 169).

The court finds that it is appropriate to apply a "modest plus" standard at this juncture, where the parties have already conducted substantial discovery. However, the court also finds that the plaintiff's submission of ten Declarations from other opt-in plaintiffs, in addition to copies of the M Street Employee Handbook, is sufficient to meet that standard. That is, a comparison of the allegations in these Declarations with those in the Complaint establishes that the plaintiff has moved the ball down the field—he is not relying purely on allegations in the initial pleading and evidence available at the time he initiated the lawsuit. The court also finds that factual disputes must, at this juncture, be resolved in favor of the plaintiff. Thus, to the extent the allegations in Debra Johnson's Declaration conflict with those in the plaintiff's Declarations, the court must disregard the former. *Accord Turner v. Utiliquest, LLC*, No. 3:18-cv-00294, 2019 WL 7461197, at *3 (M.D. Tenn. July 16, 2019) ("Although a court may consider the factual record developed to date when determining whether Plaintiff has met his evidentiary burden, a court does not resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations at this first stage." (citation omitted)).

Under the "modest-plus" standard, the operative question is whether the plaintiff has shown the existence of a "group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices." *Turner*, 2019 WL 7461197, at *4. And the court finds that he has. His own and the Declarations of the opt-in plaintiffs show that the M Street Restaurants collectively implemented very similar policies that affected all or virtually all of their FOH employees to some extent and that the defendants collectively functioned as a joint employer. That several policy changes occurred during the limitations period does not alter the analysis, as the Restaurants all implemented essentially the same changes at the same times.

Similarly situated does not mean identical. *Comer,* 454 F.3d at 546–47. And the Supreme Court has acknowledged that a plaintiff may pursue claims on behalf of a collective when he shows that his claims and those of the putative collective are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). The plaintiff has met that standard here, as the allegations in the Declarations submitted with his motion give rise to a fair inference that each restaurant in the M Street Group (1) requires FOH employees to perform compensable work without compensation; (2) shifts business expenses to FOH employees by requiring them to purchase uniforms and equipment; (3) retains a portion of tips earned by FOH employees; (4) requires FOH employees to share tips with non-tipped employees who have no customer interaction; and (5) improperly claims a tip credit for hours FOH employees spend performing non-tip-producing work. The plaintiff plausibly asserts that these policies violate the FLSA. Further, that sixty-nine individuals, in addition to the named plaintiff, have filed notices of consent to participate in the action serves as additional circumstantial evidence of the existence of a substantial number of other current and former employees who experienced similar conditions of employment.

It remains to be seen whether the factual allegations are true, but they are sufficient to warrant granting the Motion for Notice.

## B. The Scope and Content of the Notice

In addition to seeking "conditional certification" of a collective identified as "[a]ll current and former FOH employees who worked for Defendants in a non-managerial position at any time during the last three years" (the "collective"), the plaintiff requests leave to send notice to that group and to direct the defendants to facilitate such notice. Specifically, he requests that:

1. M Street Group be directed to produce to plaintiff's counsel within 14 days a list containing the names, last-known addresses, last-known phone numbers, and last-known email addresses for the collective members ("Class List");

2. Plaintiff's counsel be authorized to send documents consistent with the proposed Notices and proposed consent form, attached to the plaintiff's Memorandum as Exhibits 1, 2, and 3, to all individuals whose names appear on the Class List via email and text message as soon as practicable following M Street Group's production of the Class List;

3. Individuals to whom the Notice is sent be provided 60 days from the date the Notices are initially sent to file a consent form; and

4. Plaintiff's counsel be appointed as counsel for the collective.

Exhibit 1 to the plaintiff's Memorandum is the proposed Notice of Pending Fair Labor Standards Act Lawsuit that the plaintiff seeks to send to all members of the collective by U.S. Mail and/or email ("mail Notice"). (Doc. No. 66-1.) Exhibit 2 is the plaintiff's proposed abbreviated Notice to be sent by text message ("text Notice"). (Doc. No. 66-2.) Exhibit 3 is the proposed form Consent to Become Party Plaintiff. (Doc. No. 66-3.) M Street Group raises only two objections to the mail Notice: (1) that the first paragraph of the mail Notice "does not indicate that it is to current and former employees who were allegedly subjected to FLSA violations"; and (2) that the notice "attempts to proscribe over a three (3) year time frame from the date of notice for putative collective action members." (Doc. No. 82, at 13.) M Street Group requests, regarding the first objection, that, if the court finds that notice should issue, the parties be required to work together to submit an agreed notice. Regarding the second, M Street Group asserts that the court should limit the time period to two years from the date of notice, because the plaintiff "provides no evidence that the alleged violations were willful [or] reckless." (*Id.*)

Aside from the fact that the first objection is wholly conclusory and unsupported, it is substantively without merit. The text of the proposed mail Notice clearly explains that the lawsuit seeks "unpaid minimum and overtime wages and liquidated damages under the [FLSA]" on behalf of the named plaintiff and "other front-of-house employees who worked at Tavern, Saint Añejo, Kayne Prime, Moto, Virago, and Whiskey Kitchen in a non-managerial positions." (Doc. No. 66-1, at 1.) It also explains the theories the lawsuit pursues, including that M Street Group violated the FLSA by:

> (1) retaining a portion of tips earned by their employees each shift; (2) shifting business expenses to tipped employees by requiring them to purchase uniforms and tools of the trade; (3) requiring tipped employees to share tips with non-tipped employees; (4) requiring, suffering, or permitting employees to perform compensable work "off the clock" without compensation; and (5) requiring tipped employees to spend more than 20% of their shifts performing non-tip-producing work while paid at the lower, tipped hourly rate. Plaintiff alleges that Defendants violated the FLSA by engaging in these practices—any of which, if proven true, constitutes a violation of the law.

(*Id.* at 1–2.) This language alerts potential collective members that, if they were affected by any of these practices, they are "eligible to file a claim." (*Id.* at 2.) The defendant does not propose alternative language and, accordingly, does not provide a substantial basis for requiring the plaintiff to submit an agreed notice.

M Street Group also objects to the reference to the limitation period in the mail Notice. (*See* Doc. No. 66-1, at 2 ("If you have worked in the front-of-house area at [one of the Restaurants] in a non-managerial position at any time since July 7, 2018, then you are eligible to file a claim in this lawsuit[.]").) The defendant's objection is based solely on its contention that the plaintiff has not provided proof of willfulness on the part of M Street Group. With regard to this argument, although some discovery has been conducted, this litigation is nonetheless still in its early stages. Determining whether a defendant's alleged FLSA violations were willful would require the court to make a premature decision on the merits of the case. The plaintiff has adequately alleged

willfulness, and the assertions in his Declarations are sufficient to give rise, at this juncture, to a reasonable inference that M Street Group regularly failed to pay its FOH employees for all hours worked and that it paid overtime compensation to FOH employees at the wrong rate, failures the plaintiff characterizes as "archetypal willful violations of both [of] the FLSA's most basic requirements." (Doc. No. 96, at 10 (citing 29 U.S.C. §§ 206, 207).) The court finds that it is appropriate to provide notice to current and former employees based on a three-year statute of limitations, leaving for a later date the resolution of which limitations period actually applies.

That said, the court notes that the proposed date, July 7, 2018, contemplates a three-year limitations period from the date the plaintiff filed suit. In an FLSA action, the statute of limitations continues to run on each individual plaintiff's claims until he or she files the opt-in consent form, 29 U.S.C. § 256(b), unless the plaintiff seeks and the court grants equitable tolling to extend the statute of limitations for some period of time. The plaintiff has not yet sought equitable tolling, but courts within this circuit that have permitted equitable tolling have followed different approaches, with some setting the equitable tolling date based on the date of the filing of the original complaint, *see, e.g.*, *White v. Publix Super Markets, Inc.*, No. 3:14-CV-1189, 2015 WL 6510395, at *6 (M.D. Tenn. Oct. 28, 2015) (also noting that the motion for collective action notice was filed simultaneously with the complaint), and others from the date of filing the motion for notice, *see, e.g.*, *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 848 (S.D. Ohio 2013) (finding it "proper to toll the statute of limitations from the date Plaintiffs sought to notify putative class members of the pending action . . . until 60 days after notice is mailed to putative class members").

Without ruling on the question of equitable tolling, which, again, is not before the court, the court nonetheless finds that any such tolling would start no later than the date on which the plaintiff filed the Motion for Notice, March 21, 2022. The Notice, accordingly, should be revised

to reflect a three-year limitations period based upon that date. In addition, it should provide notice that (1) the court has not yet determined whether a two-year or three-year limitations period applies; and (2) absent a court finding that tolling applies, the statute of limitations continues to run with respect to each individual's claims up until the date the individual submits a consent form and such form is filed with the court.

In addition, the Notice must be revised to notify potential members of the FLSA collective of the possibility that they may be required to participate in written discovery and/or be deposed and participate in a trial.

## IV.    CONCLUSION

For the reasons set forth herein, the Motion for Notice will be granted, subject to the court's approval of a revised Notice incorporating the modifications noted herein.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge