IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CONNOR CROWELL, on behalf of himself and all similarly situated employees,<br><br>　　Plaintiff,<br><br>v.<br><br>M STREET ENTERTAINMENT, LLC; KAYNE PRIME, LLC; MOTO, LLC; 1120, LLC d/b/a SAINT AÑEJO; LIME, LLC d/b/a TAVERN MIDTOWN; VIRAGO, LLC; and WK, LLC d/b/a WHISKEY KITCHEN,<br><br>　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　Case No. 3:21-cv-00517<br>)　Judge Aleta A. Trauger<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM and ORDER**

Now before the court is the plaintiffs' Motion for Leave to File First Amended Collective Action Complaint ("FAC"). (Doc. No. 153.) This motion will be granted.

**I.　BACKGROUND**

Plaintiff Connor Crowell filed a collective action Complaint on behalf of himself and others similarly situated, on July 7, 2021 (Doc. No. 1), asserting claims under the Fair Labor Standards Act ("FLSA") based on allegations that the existing defendants failed to pay minimum wages and overtime pay as required by the FLSA. The originally named defendants own and operate six restaurants in downtown Nashville. (*See id.* ¶¶ 17–37.) The existing defendants have stipulated that they form a single employer that employed the named plaintiff and all opt-in plaintiffs, for purposes of their FLSA claims. (*See* Doc. No. 116.) In the Motion to Amend, filed on December 22, 2022, the plaintiffs seek to add two new defendants: MSEG, LLC ("MSEG") and Christopher

Hyndman, on the basis that they also qualify as the plaintiffs' "employers," as that term is defined by the FLSA. (Doc. No. 154, at 1.)

The Initial Case Management Order entered in this case on November 3, 2021 established a deadline of April 18, 2022 for filing motions to amend pleadings or to add parties. (Doc. No. 42, at 4.) Although other deadlines and the trial date have been moved several times, that deadline has never been extended.[1]

The plaintiffs contend in their Memorandum in support of the Motion to Amend that they did not learn until deposing Hyndman on December 9, 2022 the facts supporting their conclusion that Hyndman and MSEG qualify as employers. As set forth in the Memorandum and alleged in the proposed FAC, MSEG is the management company contracted by defendants M Street Entertainment, LLC ("M Street") and 1120, LLC ("1120") to oversee and manage the day-to-day operations of the six restaurants, all named as defendants, and to make executive decisions for them. (Doc. No. 154, at 3–4; Doc. No. 153-1 ¶ 43.) Hyndman is the sole member, founding partner, CEO, and owner of MSEG. (Doc. No. 154, at 3; Doc. No. 153-1 ¶¶ 47, 48.) He has a substantial ownership interest in M Street and 1120 and is the only active member of both. (Doc. No. 154, at 4; Doc. No. 153-1 ¶¶ 50–52.) He allegedly "performs the duties of President" for each of the restaurant defendants, which duties "include overseeing all employment practices and policies." (Doc. No. 153-1 ¶ 49.) The plaintiffs further allege in the FAC that the current defendants and MSEG share a common owner (Hyndman), common management employees, and common corporate officers, that Hyndman operates "centralized control over labor relations for all Defendants" and is "responsible for Defendants' timekeeping and tip-sharing policies" and "maintaining personnel records for all Defendants," and that there is "significant overlap of

---

[1] Trial has recently been reset for November 28, 2023. (Doc. No. 272.)

financial control and ownership of all Defendants." (*Id.* ¶¶ 58–63, 65.) Based on these facts and others referenced in their Memorandum, the plaintiffs allege that MSEG and Hyndman also form a single employer, along with the existing defendants, for purposes of the FLSA claims. (Doc. No. 153-1 ¶¶ 56, 57, 67.)

The plaintiffs assert that they have shown good cause for leave to amend under Rule 16(b) and that they have satisfied the lenient standards for amendment under Rule 15(a).

The defendants oppose the Motion to Amend, first on the basis that the plaintiffs "exaggerate[]" Hyndman's involvement in the operations of the restaurants, as his deposition testimony reveals that he is only involved in "high-level decisions related to the restaurant concepts and not in the day to day operations," has delegated authority to hire and fire employees to others, and has limited involvement in decisions regarding employee compensation and benefits. (Doc. No. 174, at 2.) The defendants assert that MSEG is a management company that M Street and 1120 engaged to "assist in managing the operations of the [restaurants]," but it has no ownership interest in the restaurants. (*Id.*) They insist that MSEG and Hyndman are not "employers" under the FLSA, making the Motion to Amend to add them futile. (*Id.* at 7.) They do not address the question of whether the plaintiffs have established good cause for belatedly seeking leave to amend.

II.     **LEGAL STANDARDS**

Federal Rule of Civil Procedure 15(a)(2) provides that, if a party can no longer amend its pleading as a matter of course (under Rule 15(a)(1)), it "may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2) specifically directs courts to "freely give leave [to amend] when justice so requires." The Sixth Circuit interprets this rule as embodying a "liberal amendment policy." *Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). Denial may nonetheless be appropriate when there is "undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In addition, however, the Sixth Circuit has recognized that a motion for leave to amend filed after the deadline for such motions has expired also "implicates" Rule 16 of the Federal Rules of Civil Procedure. *Carrizo (Utica) LLC v. City of Girard*, 661 F. App'x 364, 367 (6th Cir. 2016) (citing *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)). Under Rule 16, a scheduling order "must limit the time to . . . amend the pleadings," and the schedule may only be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(3)(A), (b)(4). Thus, "a party seeking leave to amend after the scheduling order's deadline must meet Rule 16's good-cause standard in order for the district court to amend the scheduling order," *Carrizo*, 661 F. App'x at 367 (citing *Leary*, 349 F.3d at 909), before the court even reaches the question of whether the amendment is permissible under Rule 15(a). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements. Another relevant consideration is possible prejudice to the party opposing the modification." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (internal citations omitted).

### III. ANALYSIS

#### A. Rule 16

The plaintiffs assert that they have met Rule 16's good-cause standard, because they moved diligently to amend after learning of the existence of MSEG and of Hyndman's role in it and in the operation of the other defendants, which occurred when they deposed Hyndman, well after the deadline for amending pleadings had expired. They also assert that amendment at this stage will not result in delay or prejudice, because Hyndman has already been involved in the litigation and

has been deposed. In addition, "the identity of the current parties has only very recently been settled," as the final deadline for opt-in plaintiffs to join was December 14, 2022. (Doc. No. 154, at 2; *see also* Doc. Nos. 127, 130.)

The defendants do not address the matter of the plaintiffs' diligence issue other than to assert—in a footnote—that they disclosed Hyndman's roles and ownership interests in their Business Entity Disclosures and interrogatory answers and identified MSEG as an "employer of certain individuals" in the defendants' Initial Disclosures. (Doc. No. 174, at 2 n.2.) The plaintiffs point out that the initial disclosures referenced "M Street Entertainment Group," not MSEG, LLC, and that M Street Entertainment Group is *not* an assumed name of MSEG, LLC.

Regardless, in light of the plaintiffs' assertion that they did not learn of Hyndman's and MSEG's role in the enterprise until they deposed Hyndman in December 2022 and filed their Motion to Amend within two weeks of that deposition, the court finds that the plaintiffs have established good cause for belatedly seeking leave to amend. The court discerns no possible prejudice to the current defendants or to MSEG or Hyndman in permitting the amendment.[2]

**B.  Rule 15(a)**

The defendants oppose the Motion to Amend only on the basis that the proposed amendment would be futile. In support of their contention that adding Hyndman and MSEG as defendants would be futile, the defendants' response to the Motion to Amend cites and relies on Hyndman's deposition testimony, without reference to the allegations in the FAC. At this juncture,

---

[2] As of the time the plaintiffs filed the Motion to Amend, the deadlines for completing discovery and filing dispositive motions had not yet expired. That those deadlines have now expired does give rise to a possibility of prejudice, but through no fault of the plaintiffs. Regardless, the plaintiffs have also filed a Motion for Partial Summary Judgment that, among other things, seeks judgment in the plaintiffs' favor on the issue of whether Hyndman and MSEG qualify as "employers" for purposes of the FLSA claims. All of the discovery necessary to the resolution of that question has apparently been conducted, thus suggesting no actual prejudice to the defendants.

however, the court has no need to consider Hyndman's deposition testimony, because, as the plaintiffs' correctly point out, "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). In resolving a Rule 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), but "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).The court may not consider matters outside the pleadings in ruling on a Rule 12(b)(6) motion. *See id.* at 421 (rejecting the defendant's claim that the proposed amendment was futile because the district court would have eventually granted summary judgment in its favor once it considered the evidence in the record). Rather, the court must determine whether, based on the facts alleged in the FAC, the plaintiffs state plausible FLSA claims against MSEG and Hyndman based on their qualifying as the plaintiffs' "employers" under the FLSA.

The FLSA defines the term "employer" to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Person" is defined to include "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." *Id.* § 203(a), (d). The Sixth Circuit has recognized that the statutory definition of employer is "exceedingly broad and generally

unhelpful." *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 522 (6th Cir. 2011) (citations omitted). Thus, courts are to consider the "'economic reality' of the relationship between parties" to "determine[] whether their relationship is one of employment or something else." *Id.* But the Sixth Circuit has also recognized that "[t]o state that economic realities govern is no more helpful" than the FLSA definition. *Id.* at 522–23. Ultimately, "[t]he issue of the employment relationship does not lend itself to a precise test, but is to be determined on a case-by-case basis upon the circumstances of the whole business activity." *Id.* at 522 (citation omitted).

The Sixth Circuit and the Supreme Court have provided some guideposts, however. The FLSA definition "expands, but does not purport entirely to displace, th[e] ordinary meaning of 'employer.'" *Diaz v. Longcore*, 751 F. App'x 755, 757 (6th Cir. 2018). The term must be given a "fair" interpretation rather than a broad one. *Id.* at 758 (citing *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)). Such a "fair" reading of the term "employer" generally would interpret it to encompass "only persons acting on behalf of the actual employer (in the ordinary sense of the word) *with respect to the employment relationship*, such as by hiring, supervising, paying, and managing employees on behalf of the actual employer." *Id.* (citing *Falk v. Brenann*, 414 U.S. 190, 192–93 & n.4 (1973)) (emphasis added by the Sixth Circuit). This interpretation is "consistent with the 'economic reality' test that this court has used in previous FLSA cases to determine whether an individual is an 'employer.'" *Id.* "This test extends FLSA 'employer' liability to individuals who are chief corporate officers of the business, have a significant ownership interest in the business, control significant aspects of the business's day-to-day functions, and determine employee salaries and make hiring decisions." *Id.* Likewise, the Supreme Court has applied the economic realities test to find that a "company that was responsible for hiring and supervising another company's employees and had 'substantial control of the terms and

conditions of the work of th[o]se employees' was an 'employer' under the FLSA." *Id.* at 758 (quoting *Falk*, 414 U.S. at 195). However, "[t]o be classified as an employer, it is not required that a party have exclusive control of a corporation's day-to-day functions. The party need only have 'operational control of significant aspects of the corporation's day to day functions." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983)).

As set forth above, the FAC alleges that Hyndman has a significant ownership interest in M Street and 1120 and also "performs the duties of President" for all six of the restaurant defendants, including "overseeing all employment practices and policies." (Doc. No. 153-1 ¶¶ 49–51.) MSEG is allegedly the management company that "oversees and manages the day-to-day operations" of the restaurants and makes "executive decisions" for them. The court finds that these allegations, if true, are sufficient under the economic realities test to establish that Hyndman and MSEG qualify as "employers" for purposes of the FLSA. The proposed amendment is not futile, as it would withstand a Rule 12(b)(6) motion to dismiss.

## IV. CONCLUSION AND ORDER

The plaintiffs' Motion for Leave to File First Amended Collective Action Complaint (Doc. No. 153) is **GRANTED**. The Clerk shall docket the proposed First Amended Complaint (Doc. No. 153-1) separately.

It is so **ORDERED**.

						_____
						ALETA A. TRAUGER
						United States District Judge